IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JHEN SCUTELLA,)
)
    Plaintiff) Case No. 1:19-cv-245
)
vs.)
)
)
) RICHARD A. LANZILLO
ERIE COUNTY PRISON, et al.,) UNITED STATES MAGISTRATE JUDGE
)
    Defendants)
)

## OPINION AND ORDER GRANTING
## PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF

I.    Introduction

Plaintiff Jhen Scutella, an inmate incarcerated in Erie County Prison (ECP), has filed a motion for temporary restraining order and preliminary injunction (ECF No. 15) in which he alleges that ECP personnel are displaying deliberate indifference to his serious dental condition and thereby exposing him to irreparable harm. He seeks equitable relief in the form of a mandatory injunction directing ECP personnel to refer him to an oral surgeon or other professional with the equipment and qualifications necessary to assess and, if necessary, treat his condition. On February 4, 2020, the Court conducted an evidentiary hearing during which it received testimony from Scutella, and exhibits in the form of affidavits from Aaron Merski, DMD, and ECP Deputy Warden Michael Holman, and Scutella's ECP dental records. Based upon this evidence, the Court finds that Scutella has demonstrated his entitlement to injunctive relief. At this stage of the proceedings, however, this relief is limited to referral of Scutella to an oral surgeon or other professional with the equipment and qualifications necessary to assess his condition. The record is not sufficiently developed to allow the Court to determine whether

1

further treatment of Scutella's condition is necessary, and, in any event, this determination remains a matter for the professional judgment of the medical or dental professionals responsible for Scutella's care while incarcerated.[1]

II.     Material Facts

Scutella has been incarcerated at the ECP since May 1, 2019. Prior to this incarceration, Scutella was diagnosed with an impacted wisdom tooth (tooth #16) in the left quadrant of his upper mandible. The dental staff at the State Correctional Institution at Frackville, Pennsylvania (SCI-Frackville), where Scutella was previously incarcerated, identified this condition in or around 2006. However, this impacted wisdom tooth remained asymptomatic until approximately June or July of 2019.[2] Scutella testified that he has experienced persistent pain in the area of the impacted wisdom tooth since July of 2019. Although Scutella acknowledged that the pain varies in severity, he testified that it occasionally reaches a level of 8 or 9 on a scale of 10 and often radiates down his jaw.

In response to a sick call request, Scutella was first seen by ECP medical staff for this condition on August 2, 2019. Based upon her examination, Cindy Leana, LPN, recorded that Scutella's left upper wisdom tooth was impacted "and gum around it is reddened." She assessed Scutella as having a "dental infection" and ordered ibuprofen 600MG to be taken three times per day, as needed, and clindamycin150MG, an antibiotic, to be taken three times per day.

Scutella was seen by Aaron Merski, DMD, the prison dentist, on August 14, 2019, and reported that the upper left side of his jaw hurt when he opened and closed his mouth and the

---

[1] All parties have consented to the jurisdiction of a United States Magistrate Judge to preside over proceedings in the action, including the entry of final judgment. *See* ECF Nos. 28, 32, 42; *see also* 28 U.S.C. § 636(c)(1).

[2] A different impacted wisdom tooth, which was causing Scutella pain, was extracted while Scutella was incarcerated at SCI-Frackville.

2

area was painful to the touch. Dr. Merski recorded in Scutella's medical record a "[d]ifferential diagnosis of impacted #16 leading to pain when opening/closing." Scutella's records also note that Dr. Merski took two radiographs or x-rays and "[n]oted no wisdom tooth in LL, teeth #18 and #19 showed no signs of infection."[3] Significantly, Dr. Merski also recorded that the x-ray "showed coronal portion of tooth #16 but was unable to see full tooth/root structure and location." This was apparently due to limitations of the x-ray equipment available at the ECP. Dr. Merski advised Scutella that "he should consult with an oral surgeon once released and have panoramic radiograph taken" and that "no further treatment can be done at ECP and he needs to wait for oral surgeon consultation."

On August 25, 2019, Scutella was seen in the medical department by Kylee McMillen, LPN. He reported, "my jaw is becoming worse" and asked, "how can I tell if my wisdom tooth is infected[?]" Nurse McMillen recorded that Scutella had "an abscess on his inner left cheek with s/s of infection present, redness and inflammation."[4] Nurse McMillen recorded an assessment of Scutella's condition as a "dental infection."

Scutella saw Dr. Merski again on September 4, 2019 and reported that his impacted wisdom tooth "still hurts when I chew, wakes me up at night." Dr. Merski noted "[n]o new signs of infection present" and "[i]nformed [Scutella] that he needs to be seen by oral surgeon for further imaging and diagnosis." Approximately eighteen days later, on September 22, 2019, Scutella was seen by James Wasielewski, again with complaints of "pain to left jaw." Nurse Wasielewski recorded that Scutella had an "abscess to back left wisdom tooth" and was

---

[3] The Court takes judicial notice of the fact that teeth #18 and #19 are located in the lower left quadrant of the jaw while tooth #16 is located in the upper left quadrant.

[4] Although the meaning of Nurse McMillen's use of "s/s" is unclear, the Court notes that this acronym is sometimes used as a reference to "signs and symptoms." *See* https://medical-dictionary.thefreedictionary.com/S%2FS (last visited February 5, 2020).

3

experiencing "ongoing pain to left side." He prescribed doxycycline 100MG to be taken twice per day.

Thereafter, on October 9, 2019, Scutella revisited the medical department to see Dr. Merski. Dr. Merski recorded an assessment of "[h]orizontally impacted #16, appearing to face distally, located palatally (sic) to tooth #15." According to ECP medical records, Dr. Merski advised Scutella that "his condition ***is not life threatening***, but [he] ***definitely needs to be addressed by oral surgeon*** as soon as he's released from prison." (emphasis supplied).

Scutella returned to the medical department on December 4, 2019, with complaints of increased jaw and tooth pain and recurring infections. Nurse McMillen recorded that Scutella had an "abscess present to gum line, with redness, swelling, decay, breakage, and pain," and again assessed his condition as a dental infection. Nurse McMillen prescribed another course of clindamycin 150MG and acetaminophen 325MG.

On December 11, 2019, Dr. Merski reexamined Scutella and again recommended an "OS [oral surgeon] consultation." Dr. Merski reiterated that "treatment of tooth #16 is not possible at this facility, and that a consultation with oral surgeon along with a 3D scan, is the next step."

At the preliminary injunction hearing, Scutella testified that he visited the prison's medical department again in January of 2020. Although the medical notes from this encounter are not part of the evidentiary record, Scutella testified that his condition on that occasion, and the advice that he received in response, were consistent with his prior visits to the medical department. He also testified that his current level of pain and discomfort has not abated since the January appointment.

III. Analysis

A preliminary injunction is not granted as a matter of right. *Kerschner v. Mazurkewicz*, 670 F.2d 440, 443 (3d Cir.1982). To the contrary, it is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis deleted).

In determining whether to grant a preliminary injunction, a court must consider four factors: (1) whether the plaintiff has demonstrated a likelihood of success on the merits; (2) whether he or she will suffer irreparable harm if the injunction is denied; (3) whether granting relief will not result in even greater harm to the nonmoving party; and (4) whether the public interest favors such relief. *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010). The party requesting the injunction has the burden of introducing evidence to support the first two factors. *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994). The absence of adequate evidence to support either of these two factors warrants the denial of a request for preliminary injunctive relief. *Id.*; *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000). Further, a court may not grant preliminary injunctive relief unless "[t]he preliminary injunction [is] the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. A Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). The relevant inquiry is whether the party moving for the injunctive relief is in danger of suffering the irreparable harm at the time the preliminary injunction is to be issued. *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1264 (3d Cir. 1985).

The limitations on the power of courts to enter injunctions in a correctional context are buttressed by statute. Specifically, 18 U.S.C. § 3626 limits the authority of courts to enjoin the exercise of discretion by prison officials, and provides that:

5

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C.A. § 3626(a)(1)(A).

Guided by these exacting standards, the Court turns to the merits of Scutella's motion.

A. Likelihood of Success on the Merits

Scutella asserts that the Defendants have displayed deliberate indifference to his serious medical needs and thereby violated his Eighth Amendment right to be free from cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97 (1976) (stating that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment") (internal quotation omitted). For purposes of the pending motion, and consistent with the Court's obligation to narrowly limit any prospective relief it may grant, the Court need not determine whether the care Scutella has received to date exhibits deliberate indifference to his dental needs. Rather, the Court believes the appropriate focus is whether, as of the date of the hearing in this matter, Scutella has demonstrated a likelihood of success on the merits of his claim that Defendants' continued denial of a consultation with an oral surgeon or other appropriate specialist violates his Eighth Amendment rights. The Court finds that Scutella has met his burden on this element of his request for injunctive relief.

6

To establish a violation of his constitutional right to adequate medical care, a plaintiff must demonstrate: (1) he has a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Regarding the first element, a serious medical need is "one that has been diagnosed as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *See Walker v. Brooks*, 2009 WL 3183051 (W.D. Pa. Sept. 30, 2009) (citing *Monmouth County Correction Institute Inmates v. Lanzaro*, 834 F. 2d 326, 347 (3d Cir. 1987)). Scutella's medical records, including the notes entered by Dr. Merski and other providers, consistently indicate that Scutella's impacted wisdom tooth requires medical attention, including evaluation and potential treatment by an oral surgeon. Dr. Merski noted that Scutella's impacted wisdom tooth "definitely needs to be addressed by oral surgeon as soon as he's released from prison" and that the ECP did not have the equipment necessary to properly evaluate Scutella's dental needs. He noted that the x-ray equipment available at the ECP did not allow him "to see full tooth/root structure and location" and that evaluation of Scutella's condition required a panoramic x-ray and the expertise of an oral surgeon.

Scutella's records also evidence that he has experienced repeated and ongoing dental infections since the medical department first treated him in August of 2019. Repeated courses of antibiotics have not ended these infections.[5] Moreover, the Court notes that Scutella's medical records repeatedly indicate the presence of an abscess and other signs of infection in the area of Scutella's impacted wisdom tooth. Finally, Scutella testified that he has endured the pain of his condition for approximately seven months, and the record includes no evidence to believe this

---

[5] The Defendants, through the affidavit of Dr. Merski, dispute that the infections are related to the impacted wisdom tooth. The Court need not resolve this issue, however, because the record establishes Scutella's serious medical need independent of the recurring infections.

7

pain will subside in the future. While Dr. Merski and Deputy Warden Holman point out that Scutella's condition is "not life threatening," this is not the standard for determining whether a medical need is "serious" or whether the care provided satisfies Eighth Amendment requirements. Based on the foregoing, the Court concludes that the record sufficiently establishes Scutella's serious medical need for purposes of the preliminary injunction analysis.

Turning to the second element of his deliberate indifference claim, the record reflects that further delay in the assessment and possible treatment of Scutella's treatment will likely rise to the legal threshold of deliberate indifference.[6] Deliberate indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

In contrast, "an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim." *Tillery v. Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases). Such complaints fail as constitutional claims because "prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners," *Durmer*, 991 F.2d at 67 (citations omitted), and "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his

---

[6] As noted, the Court need not, and does not, determine whether the prior dental care provided to Scutella evidences deliberate indifference to his serious medical need. Instead, the focus of the present motion is whether continued delay in assessment and possible treatment of Scutella's condition is likely to meet this threshold and threatens him with irreparable harm.

behavior will not violate a prisoner's constitutional rights.")). "Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983." *Tillery*, 2018 WL 3521212, at *5 (citing *Gause v. Diguglielmo*, 339 Fed. Appx. 132 (3d Cir. 2009) (characterizing a dispute over pain medication as the type of "disagreement over the exact contours of [plaintiff's] medical treatment" that does not violate the constitution)). Based upon these principles, "courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care." *Hensley v. Collins*, 2018 WL 4233021, at *3 (W.D. Pa. Aug. 15, 2018) (quoting *Clark v. Doe*, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)). *See also Wisniewski v. Frommer*, 751 Fed. Appx. 192, 195-96 (3d Cir. Oct. 3, 2018) (noting that "there is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'") (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017)).

"Nonetheless, there are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements." *Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017). These circumstances include, for example, where prison officials, "with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment' of the inmate's condition." *Id.* (quoting *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978) (internal citation omitted). Similarly, prison officials may not deny reasonable requests for medical treatment when such "denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,'" *Id.* (quoting *Monmouth County Corr. Inst. Inmates*, 834 F.2d at 346 (internal citation omitted), or intentionally refuse to provide care where the need for such care is acknowledged. *Id.* (citing *Ancata v. Prison Health Servs.*, 769 F.2d 700, 704 (11th Cir. 1985)).

9

The present case extends beyond a mere disagreement between an inmate and doctors over alternate treatment plans. Dr. Merski expressly acknowledged that Scutella needs to be seen by an oral surgeon because the ECP does not have the means to properly diagnose and evaluate his condition. Although Dr. Merski opined that this consultation could wait until Scutella gets out of the ECP, his repeated emphasis on the need for such a consult and the limitations on the equipment at the ECP infuse his recommendation with an unmistakable urgency. Moreover, it appears that nonmedical reasons may have factored into the delay in referring Scutella to an oral surgeon or other appropriate specialist. For example, the evidence arguably indicates an attempt by the ECP to "run out the clock" until Scutella is released in order to avoid the logistical challenge and cost of referring Scutella to an oral surgeon despite the determination that such a referral is medically appropriate and necessary. Finally, the delay in seeking a proper evaluation of Scutella's condition represents the type of "persistent conduct in the face of resultant pain" that has been condemned by the Third Circuit. *White*, 897 F.2d at 109. Indeed, other federal courts have found potential merit in cases involving facts comparable to the present case. *See Borgerding v. California*, 370 Fed. App. 797, 798 (9th Cir. 2010) ("A reasonable jury could conclude that defendant [] was deliberately indifferent to [the plaintiff's] health in delaying extraction [of impacted wisdom teeth] because he observed [the plaintiff] enduring the painful effects of the impacted wisdom teeth for at least a year [and] knew that two prior dentists had already concluded that extraction was necessary."); *see also Boyd v. Knox*, 47 F. 3d 966, 968 (8th Cir. 1995) (three week delay in dental care for impacted wisdom tooth, coupled with knowledge of inmate's suffering, can support jury finding of an Eighth Amendment violation).

Based upon the foregoing, the Court finds that Scutella has demonstrated a likelihood of success on the merits.

B. Irreparable harm to the Plaintiff

The Court finds that Scutella has demonstrated that he will be irreparably harmed if the Court refuses to grant injunctive relief. Courts have repeatedly held that severe dental pain can be irreparable harm. *Bentz v. Ghosh*, 718 Fed. App. 413, 420 (7th Cir. 2017) (reversing trial court's denial of a temporary restraining order because the court's "denial of injunctive relief rest[ed] on an incorrect conclusion that the staff's refusal to treat [the plaintiff's] intermittent tooth pain, which affected his ability to eat and swallow, was not evidence of irreparable harm."); *see also Mason v. Ryan*, 2019 WL 1797199, at *8 (D. Ariz. Apr. 24, 2019) ("To be sure, the Court takes seriously [the plaintiff's] claims of ongoing pain, and pain can constitute irreparable harm.") (citing *Rodde v. Bonta*, 357 F.3d 988, 999 (9th Cir. 2004) (irreparable harm includes delayed or lack of necessary treatment, and increased pain)); *Taylor v. Mashack*, 2019 WL 4242506, at *3 (W.D. Wis. Sept. 6, 2019) ("Money damages might compensate [the plaintiff] for any pain he is forced to endure, but damages will not prevent his current suffering… [the plaintiff's] ongoing pain constitutes an irreparable harm for which there is no adequate legal remedy."). The facts of this case support a similar conclusion. Thus, this factor also counsels in favor of granting Scutella's motion.

C. Burden upon the Defendant and the Public Interest[7]

The Court is mindful that a mandatory injunction directing government officials to provide certain medical services is not without burden and cost. In this case, however, the Court finds that the burden upon Scutella of delaying proper evaluation of his condition far outweighs the burden and cost that arranging such an evaluation will impose upon the Defendants. The Court is aware that inmates are routinely transported from their institutions to medical facilities for recommended medical care, particularly where, as here, there is an acknowledged inability to evaluate an inmate's condition due to limitations of equipment or personnel at the correctional institution. While the record is silent regarding the cost of an oral surgeon's evaluation and possible treatment, it does not outweigh the pain Scutella will experience if denied the same.

Further, because the Court has concluded that failure to proceed with the recommended consultation will likely result in an Eighth Amendment violation, the public interest will be served by proceeding with the referral. Indeed, the Third Circuit has instructed that "the public interest is best served by eliminating" constitutional violations. *See Swartzwelder v. McNeilly*, 297 F.3d 228, 242 (3d Cir. 2002); *see also City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579 (E.D. Pa. 2017) ("enjoining constitutional violations also furthers the public interest."). Therefore, this factor also favors granting Scutella's motion.

---

[7] The Court consolidates its analysis of the last two factors because "[w]here the government is a party, the last two factors in the preliminary injunction analysis, namely the balance of the equities and the public interest, merge." *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579 (E.D. Pa. 2017).

IV. Remedy and Order

Having found that all factors favor the granting of Scutella's motion, the Court must now craft a remedy. Although district courts are afforded substantial discretion in fashioning injunctive relief, the relief provided should not be broader than required to provide a full remedy to the injured party. *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464 (3d Cir. 2011). "In all cases and especially where, as here, an injunction will require federal interference with state or local government administration equitable relief must be specifically tailored to the specific violation shown." *Schweiker v. Gordon*, 442 F. Supp. 1134, 1141 (E.D. Pa. 1977). Moreover, "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiff." *SEC v. Gentile*, 939 F.3d 549, 560 (3d Cir. 2019).

The Court also notes that the record is not fully developed regarding which of the Defendants has the authority to carry out this Court's Order. Whether this authority rests with the Medical Director serving on behalf of Wexford Health Services, Deputy Warden Holman or some other representative of the County of Erie, the Court expects the necessary personnel to consult and cooperate to the extent necessary to ensure compliance.[8]

Accordingly, it is hereby ORDERED that:

Plaintiff Jhen Scutella's "Motion for Injunctive Relief/TRO" [ECF No. 15] is GRANTED.

It is further ORDERED that Defendants shall schedule a consultation with an oral surgeon or other appropriate specialist and arrange necessary transportation for Scutella to that consultation as soon as practicable in accordance with the foregoing opinion.

---

[8] The Court also recognizes that the ECP itself is not a "person" amenable to suit under 42 U.S.C. §1983. *Meyers v. Schuylkill Cty. Prison*, WL 559467, at *8 (M.D. Pa. Mar. 7, 2006). The Court views Scutella's naming of the ECP as a misnomer common among pro se plaintiffs.

13

It is further ORDERED that on or before February 17, 2020, Defendants shall file a status report advising the Court of the status of their compliance with this injunction.

                                                                                       _____
                                                                                       RICHARD A. LANZILLO
                                                                                       United States Magistrate Judge

Dated: February 5, 2020